Hyman R. Redak and Rita F. Redak v. Commissioner.
Redak v. Commissioner
Docket No. 4580-66.
United States Tax Court
T.C. Memo 1968-213; 1968 Tax Ct. Memo LEXIS 85; 27 T.C.M. (CCH) 1053; T.C.M. (RIA) 68213; September 24, 1968. Filed Arthur B. Hayutin, 1529 York, Denver, Colo., for the petitioners. Frederick B. Strothman, for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in the petitioners' income tax of $1,626.58 for the fiscal year ended August 31, 1962 and $1,480.45 for the fiscal year ended August 31, 1963. The only issue for decision is whether the Commissioner erred in changing long term capital gains reported to ordinary income. The stipulated facts are adopted and incorporated herein by this reference as the findings of fact. The petitioners, husband *86 and wife, resided at 4830 East 17th Avenue, Denver, Colorado, at all times material hereto. They filed their joint income tax returns for their taxable years ended August 31, 1962 and August 31, 1963 with the district director of internal revenue for the district of Colorado, Denver, Colorado. Hyman R. Redak is hereinafter referred to as Hyman. Russel Daughenbaugh (hereinafter referred to as Daughenbaugh) was in the business of constructing and selling houses prior to October 1956 and during the taxable years. The purchasers of homes from Daughenbaugh were frequently unable or unwilling to pay in cash the difference between the selling price of the property and the amount a mortgagee would lend. 1054 The mortgagee in this case was Englewood Savings and Loan Association (hereinafter referred to as Englewood), a Colorado corporation. It was limited by state law as to the amount it could lend. Englewood would take a note and a mortgage from the purchaser of the property each in an amount equal to the difference between the selling price of the house and the amount of the down payment which the purchaser was able or willing to pay. Englewood would then make a cash payment *87 to Daughenbaugh, for the mortgagor, of the amount of money it was willing to lend and also would deliver to Daughenbaugh a savings account represented by a savings account book for the difference between the face amount of the mortgage and the lesser amount Englewood had paid in cash to Daughenbaugh on the purchase price. Daughenbaugh, as part of the same transaction, would assign the savings account in his name to Englewood as additional conditional security for the amount owed on the mortgage. Englewood would pay to the owner of the savings account two-thirds of each payment of principal which it received from the mortgagor. Interest was paid by Englewood to the owner of each savings account, while the related mortgage was not in default, at the same rate paid to other owners or holders of savings accounts. None of the mortgages involved herein were in default. Daughenbaugh, in order to obtain funds, sold the savings accounts to Hyman on or about October 15, 1956. The accounts then had a face value of $61,907 and accrued interest of $97.10, or a total of $62,004.10. Hyman paid Daughenbaugh $31,002.05 for those accounts. Hyman held all of the savings accounts involved herein *88 for more than six months. The petitioners did not report any gain for income tax purposes on the savings accounts until they had recovered an amount equal to the total amount they had paid Daughenbaugh. They reported the interest received each year as interest. The petitioners, after recovering their cost, reported $8,013.50 and $5,366.25 as long-term capital gain on the accounts for the taxable years. The Commissioner, in determining the deficiencies, held that those amounts were taxable as ordinary income. The petitioners contend that the amounts which they received from Englewood in each tax year represented capital gains from the sale or exchange of capital assets. But where was there a sale or exchange by Hyman? Cf. Dobson v. Commissioner of Internal Revenue [44-1 USTC 9193], 321 U.S. 231. What did he sell or exchange? He still owned the savings accounts during and after the tax years. Neither Daughenbaugh nor Hyman ever paid any money to Englewood for the savings accounts. Englewood received mortgages from those who purchased real properties from Daughenbaugh. The amount of each mortgage was the amount of Daughenbaugh's sale price less the purchasers' downpayment. *89 But the amount of cash which Englewood paid out on the mortgage was less than the face amount of the mortgage and for the difference it gave Daughenbaugh credit in one of its savings accounts. A part of that credit was to be paid to Daughenbaugh as the mortgagor made larger payments on its mortgage debt to Englewood. The payments thus due Daughenbaugh represented payments to him on the purchase price owed him by the purchaser of the mortgaged property. Cash payment made by Englewood to Daughenbaugh or Hyman, of course, reduced the remaining value of the savings account as collateral security for the mortgagor's debt to Englewood but each such payment from Englewood was only two-thirds of a contemporaneous payment to Englewood made by the mortgagor on his mortgage debt. The mortgagor was the only debtor in the whole arrangement. He was indebted to Englewood but not to Hyman in the tax years. Hyman merely bought Daughenbaugh's rights in the savings accounts. He never sold or exchanged those accounts. Not only was there no sale or exchange as required by section 1222(3), I.R.C. 1954, but also the presence of an indebtedness or other capital asset is not shown. *90 Sec. 1221; cf. Wilbur Security Co. [Dec. 23,435], 31 T.C. 938, 948, affd. [60-2 USTC 9596] 279 F. 2d 657; Exchange National Bank v. Receivers of City S.B. & L. Association, 95 Colo. 498, 37 P. 2d 394. Petitioner cites section 1232(a) which provides that in the case of bonds, notes, or other evidence of indebtedness which are capital assets in the hands of the taxpayer and which are issued by a corporation, the amounts received by the holder on retirement of such bonds or other evidence of 1055 indebtedness shall be considered as amounts received in exchange therefor. This provision does not apply here. The savings account has not been shown to be a capital asset in the hands of Hyman and the savings book was not the type of evidence of indebtedness provided for in section 1232 (a). Englewood was not the taxpayer here and was not a national savings bank or a building and loan association. Cf. sccs. 591 and 116, which do not apply here. Decision will be entered for the respondent.